IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

STATE OF WASHINGTON, WASHINGTON STATE DEPARTMENT OF TRANSPORTATION,

                    Respondents,

DANIEL A. SLIGH and SALLETTEE R. SLIGH, individually and the marital community composed thereof; BRYCE KENNING, a single person,

                    Plaintiffs,

        v.

MULLEN TRUCKING 2005, LTD, a Canadian corporation or business entity d/b/a MULLEN TRUCKING LP; WILLIAM SCOTT and JANE DOE SCOTT, individually and the marital community composed thereof,

                    Petitioners,

and

SAXON ENERGY SERVICES, INC., TAMMY J. DETRAY and GREGORY DETRAY, individually and the marital community composed thereof; G&T CRAWLERS SERVICE, a Washington business entity,

                    Defendants.

_____

MULLEN TRUCKING 2005, LTD, a Canadian corporation or business entity d/b/a MULLEN TRUCKING LP; WILLIAM SCOTT and JANE

No. 76310-5-I

DIVISION ONE

FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
2018 OCT 22 AM 9: 16

PUBLISHED OPINION

No. 76310-5-I/2

DOE SCOTT, individually and the marital
community composed thereof;

     Petitioners,

   v.

STATE OF WASHINGTON,

     Respondent,

PATTY AUVIL d/b/a OLYMPIC PENINSULA
PILOT SERVICE and JOHN DOE AUVIL,
individually and the marital community
composed thereof,

     Defendants,

and

MOTORWAYS TRANSPORT, LTD, a
Canadian corporation; AMANDEEP SIDHU
and JANE DOE SIDHU, individually and the
marital community composed thereof,

     Petitioners.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)   FILED: October 22, 2018

ANDRUS, J. — William Scott, a truck driver employed by Mullen Trucking

2005 Ltd. (Mullen), was transporting an over-height load when his truck struck

overhead supports on the Skagit River Bridge, causing the bridge to collapse. The

Washington State Department of Transportation (State or WSDOT) sued Scott and

Mullen Trucking for negligence. Mullen alleged that WSDOT and a second truck

driver, Amandeep Sidhu and Sidhu's employer, Motorways Transport, Ltd., were

contributorily liable for the bridge collapse. After WSDOT added Motorways to the

lawsuit, Mullen and Motorways sought to reduce their liability by the percentage of

fault they claimed was attributable to the State. The trial court dismissed Mullen's

and Motorways' contributory negligence affirmative defense and/or counterclaim on summary judgment, ruling that under RCW 46.44.020, no fault may be allocated to the State. We granted Mullen's motion for discretionary review, which Motorways joined.

Under Washington's motor vehicle code, a person who operates a vehicle in any negligent or illegal manner is liable for "all damages" to a public highway or bridge. RCW 46.44.110. The legislature passed a statute explicitly providing that "no liability" may attach to the State for damages that occur by reason of the existence of an overhead structure where, as here, the State provides at least 14 feet of vertical clearance. RCW 46.44.020. We conclude that these statutes unambiguously express a legislative determination that all financial responsibility for damage to the Skagit River Bridge must be borne by negligent motorists and none may be shifted to the State. An allocation of fault under RCW 4.22.070 would shift a portion of financial responsibility to the State in contravention of RCW 46.44.020. We affirm the trial court.

## FACTS

The Skagit River Bridge is located on Interstate 5 between Burlington and Mount Vernon. The bridge has two lanes in each direction with a concrete barrier separating northbound and southbound traffic. Before its collapse, the bridge was a "through truss structure," meaning that it had trusses, or supports, above the roadway. Several of the bridge's steel parts were in tension ("fracture critical") so that if one failed, a portion of the bridge could collapse. The bridge's supports formed an arch so that vertical clearance was highest in the center and lowest on

the sides of the roadway. The left southbound lane had a clearance of 17 feet 6 inches and the right lane had a clearance of 15 feet 6 inches. The right shoulder had a clearance of 14 feet 8 inches.

The traffic lanes were narrower on the bridge than on the roadway approaching the bridge. The bridge was signed with what is known as an "object marker," which indicates a variety of road conditions, but it did not specifically identify vertical clearance or lane width.

On May 23, 2013, Scott was transporting a metal casing shed from Canada to Washington State for his employer, Mullen Trucking. Before crossing the border, Scott obtained an online permit from WSDOT to transport an over-width and over-height load from Valemount, British Columbia, to Vancouver, Washington. Online permits are self-issued and require the user to supply load and route information. Mullen's permit listed the load as having a maximum width of 11 feet 6 inches and a maximum height of 15 feet 9 inches. The permit warned that WSDOT did not guarantee height clearances. Scott acknowledged that the driver is responsible for researching the route and ensuring clearance.

Because of the height of Scott's load, he was required to use a pilot car with a height pole. The pilot car driver is expected to know road clearances and inform the truck driver of any obstacles. Scott hired a local pilot car driver, Tammy DeTray, for her knowledge and experience of the local roads. DeTray did not research Scott's route or give him any information about the Skagit River Bridge.

As DeTray and Scott approached the bridge, they were both in the right hand lane, with DeTray a few seconds ahead of Scott. Scott observed a semi-

truck approaching quickly from behind. This second truck belonged to Motorways Transport and was driven by Sidhu. Sidhu moved into the left lane and began passing Scott before they entered the bridge.

DeTray, the pilot car driver, crossed the bridge. She was on the phone with her husband as she drove. Although DeTray testified that her height pole did not strike the bridge, a witness stated that DeTray's height pole struck the bridge's overhead spans several times.

When Scott entered the bridge, Sidhu was pulling ahead of him in the left lane. Sidhu's truck was extremely close to Scott, forcing Scott to the right and partially onto the shoulder. Scott heard a huge bang, his truck began to shake, and he felt some of the truck's tires come off the ground. Scott did not know what had happened. He coasted across the bridge, regained control, and pulled over. When Scott walked back to the bridge, he saw that the north section had collapsed and was in the water.

Three passenger vehicles had entered the bridge behind Scott and Sidhu. The first, driven by David Ruiz, managed to cross the bridge. The next two vehicles, driven by Daniel Sligh and Bryce Kenning, crashed into the river as the bridge collapsed. The occupants suffered non-life threatening injuries.

An investigation later determined that Scott's load had an actual maximum height of 15 feet 11 inches, two inches above his permit allowance, and that the load struck 11 of the bridge's braces. The investigation report stated that Scott's load could only have cleared the bridge if it straddled the right and left lanes. Scott could not straddle the lanes because Sidhu's truck was in the left lane. The

investigation concluded that Scott caused the collision by failing to ensure his load height was proper and failing to know the clearance heights on the bridge.

The State brought an action against Mullen, Scott, and DeTray, alleging that their negligence caused the bridge collapse.[1] In its answer, Mullen asserted contributory negligence as an affirmative defense and counterclaim, alleging that the State's damages were caused wholly or partially by its own negligence in bridge maintenance, signage, and permitting. Mullen argued that its liability should be reduced by the State's comparative fault. Mullen also asserted a cross claim against Motorways. The State amended its complaint to add a negligence claim against Motorways.[2]

The State moved for partial summary judgment, arguing that under RCW 46.44.020, it could not be found financially responsible for any portion of the damages resulting from the bridge collapse. Mullen and Motorways opposed the motion, arguing that RCW 46.44.020 does not protect the State from defensive counterclaims or from a finding of comparative fault that would reduce the defendants' liability. In addition, Motorways argued that, even if the statute shields the State from any finding of comparative fault as to Mullen, it does not have the same effect as to Motorways.

The trial court granted the State's motion for partial summary judgment, concluding that RCW 46.44.020 shields the State from liability and, in this case,

---

[1] The State also asserted a negligence claim against Saxon, the company that hired Mullen to transport the casing. Saxon did not participate in this appeal.

[2] The State also added a claim against Olympic Peninsula Pilot Service, which allegedly employed DeTray. The motorists whose cars crashed into the river, Sligh and Kenning, joined the State's action. Sligh and Kenning settled and were no longer parties to the action when the court granted partial summary judgment to the State.

precludes any finding of comparative fault that would shift financial responsibility to the State. We granted discretionary review.

## ANALYSIS

Mullen and Motorways appeal the grant of partial summary judgment to the State, arguing that the trial court erroneously interpreted RCW 46.44.020 to preclude any finding that the State was contributorily negligent. Mullen and Motorways assert that, under Washington's comparative fault scheme, they should be permitted to seek an allocation of fault against any and all at-fault entities. See RCW 4.22.070. They contend RCW 46.44.020 shields the State from liability but not from an allocation of fault.

Article II, § 26 of the Washington State Constitution provides that "the legislature shall direct by law, in what manner, and in what courts, suits may be brought against the state." In 1961, the Legislature waived the state's sovereign immunity with respect to tort actions. LAWS OF 1961, ch. 136, § 1, codified as RCW 4.92.090. This statute makes the state presumptively liable for its tortious conduct "in all instances in which the Legislature has not indicated otherwise." Savage v. State, 127 Wn.2d 434, 445, 899 P.2d 1270 (1995). But the right to sue the State is not a fundamental right. Wells Fargo Bank, N.A. v. Dep't of Revenue, 166 Wn. App. 342, 358, 271 P.3d 268 (2012). The legislature has the authority to define the parameters of any cause of action, including claims that may be asserted against the State. See Sofie v. Fibreboard Corp., 112 Wn.2d 636, 666, 771, P.2d 711 (1989); O'Donoghue v. State, 66 Wn.2d 787, 789, 405 P.2d 258 (1965). See also Wells Fargo Bank, 166 Wn. App. at 358 (holding that Washington's

Administrative Procedure Act, chapter 34.05 RCW, limited the general right to sue the State).

WSDOT contends that RCW 46.44.020 constitutes a legislative decision to restrict claims, and by extension, a contributory negligence affirmative defense, against the State arising out of vehicular damage to a State-owned bridge as long as the State has provided at least 14 feet of vertical clearance. We agree.

Statutory interpretation is a question of law that we review de novo. City of Spokane v. Rothwell, 166 Wn.2d 872, 876, 215 P.3d 162 (2009). Our primary duty in interpreting a statute is to discern the intent of the legislature. State v. J.P., 149 Wn.2d 444, 450, 69 P.3d 318 (2003). We begin with the statute's plain language, which may be discerned "from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wn.2d 1, 11, 43 P.3d 4 (2002). If the plain meaning of the statute is unambiguous, our inquiry is at an end. Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010).

The statute at issue concerns vehicle height and vertical clearance. This statute was first enacted in 1937 and has changed little since that time.[3] LAWS OF 1937, ch. 189, § 48. The current statute, RCW 46.44.020, limits vehicle height to 14 feet and requires the vehicle operator to exercise due care in ensuring adequate vertical clearance:

> It is unlawful for any vehicle. . . to exceed a height of fourteen feet
> above the level surface upon which the vehicle stands. . . The

---

[3] The original statute limited vehicle height to 12 feet 6 inches. LAWS OF 1937, ch. 189, § 48.

provisions of this section do not relieve the owner or operator of a vehicle or combination of vehicles from the exercise of due care in determining that sufficient vertical clearance is provided upon the public highways where the vehicle or combination of vehicles is being operated. . .

RCW 46.44.020.

The same statute relieves the State of liability if it has either (1) provided at least 14 feet of clearance or (2) properly signed a lower clearance:

[N]o liability may attach to the state or to any county, city, town, or other political subdivision by reason of any damage or injury to persons or property by reason of the existence of any structure over or across any public highway where the vertical clearance above the roadway is fourteen feet or more; or, where the vertical clearance is less than fourteen feet, if impaired clearance signs. . . are erected and maintained on the right side of any such public highway. . . If any structure over or across any public highway is not owned by the state or by a county, city, town, or other political subdivision. . . no liability may attach to the owner by reason of any damage or injury to persons or property caused by impaired vertical clearance above the roadway.

RCW 46.44.020. It is undisputed that in this case, the State provided more than 14 feet of vertical clearance on the Skagit River Bridge, Scott's load exceeded 14 feet in height and, although permitted for 15 feet 9 inches,[4] his load exceeded the 15 feet 6 inches of clearance on the bridge.

---

[4] The State notes that, under the rules governing permits, the operator accepts liability for any damage resulting from the use of an oversize vehicle:

Permits are granted with the specific understanding that the permit applicant shall be responsible and liable for accidents, damage or injury to any person or property resulting from the operation of the vehicle covered by the permit upon public highways of the state. The permit applicant shall hold blameless and harmless and shall indemnify the state of Washington, department of transportation, its officers, agents, and employees against any and all claims, demands, loss, injury, damage, actions and costs of actions whatsoever, that any of them may sustain by reason of unlawful acts, conduct or operations of the permit applicant in connection with the operations covered by the permit.

WAC 468-38-050(5).

A related provision, RCW 46.44.110, defines a motorist's liability.[5] Under that statute, a motorist who operates a vehicle negligently or illegally is liable for all damages to a public highway or bridge:

> Any person operating any vehicle or moving any object or conveyance upon any public highway in this state or upon any bridge or elevated structure that is a part of any such public highway is liable for all damages that the public highway, bridge, elevated structure, or other state property may sustain as a result of any illegal operation of the vehicle or the moving of any such object or conveyance or as a result of the operation or moving of any vehicle, object, or conveyance weighing in excess of the legal weight limits allowed by law. This section applies to any person operating any vehicle or moving any object or contrivance in any illegal or negligent manner or without a special permit as provided by law for vehicles, objects, or contrivances that are overweight, overwidth, overheight, or overlength. Any person operating any vehicle is liable for any damage to any public highway, bridge, elevated structure, or other state property sustained as the result of any negligent operation thereof.

RCW 46.44.110.

Read together, these statutes unambiguously (1) limit vehicle height and require a vehicle's operator to exercise due care as to vertical clearance; (2) declare that "no liability may attach to the state" where it has provided at least 14 feet of clearance; and (3) assign to a negligent motorist liability for "all damages" to a public highway or bridge. Applying these statutes to the circumstances here, we conclude that they clearly express a legislative determination that the State is to bear no financial responsibility for damages resulting from the collision of the Mullen truck with the Skagit River Bridge. The trial court did not err in interpreting RCW 46.44.020 to preclude any finding of comparative fault.

---

[5] This statute was also first enacted in 1937. LAWS OF 1937, ch. 189, § 57.

Mullen and Motorways contend that apportioning fault to the State under RCW 4.22.070(1) would not shift "liability" to the State but only reduce the State's recovery. But, reducing the State's recovery would, in fact, shift a degree of liability to the State, contrary to RCW 46.44.020. Apportioning fault to the State would also relieve the negligent motorist of its liability for "all damages" under RCW 46.44.110.

Mullen and Motorways also assert that, by the plain language of the comparative fault statute, RCW 4.22.070(1), it applies here. As part of the tort reform act of 1986, the legislature replaced joint and several liability with comparative negligence in most situations. Tegman v. Accident & Med. Investigations, Inc., 150 Wn.2d 102, 108-09, 75 P.3d 497 (2003). To determine proportionate liability, the trier of fact allocates fault among all at-fault entities. RCW 4.22.070(1). The State does not argue that it is categorically exempt from proportionate liability. Rather, it asserts that, because the motorist liability statutes specifically relieve the State of liability under the factual circumstances of this case, and assign all liability to the negligent motorists, these statutes, and not RCW 4.22.070, govern. We agree.

The State has a common law duty to maintain roads in a condition safe for ordinary travel. Wuthrich v. King County, 185 Wn.2d 19, 25, 366 P.3d 926 (2016). And generally, when a motorist sues the state for a breach of this common law duty, proportionate liability is the general rule. Tegman, 150 Wn.2d at 109. But under our state constitution, the legislature has the authority to limit the type of legal claims that may be asserted against the State. See Wells Fargo Bank, 166

Wn. App. at 358. Where a specific statute conflicts with a general one, the specific statute prevails. Id. See also Residents Opposed to Kittitas Turbines v. State Energy Facility Site Evaluation Council (EFSEC), 165 Wn.2d 275, 309, 197 P.3d 1153 (2008) (where one statute is specific and the other is general, the specific statute controls regardless of when it was enacted). Because the motorist liability statutes, RCW 46.44.020 and .110, specifically address liability in the circumstances here, they control over the general proportionate liability statute.

Mullen and Motorways argue that RCW 46.44.020 does not displace RCW 4.22.070 but is, at most, a grant of immunity. They contend that if the State is "an entity immune from liability," RCW 4.22.070 contemplates that its fault should be determined. Mullen and Motorways rely on Humes v. Fritz Cos., Inc., 125 Wn. App. 477, 105 P.3d 1000 (2005) to assert that fault must be apportioned to all entities, even those who may be immune from suit. In Humes, a crane operator sued a trucking company for personal injuries he sustained outside the Tulalip Casino on the Tulalip Indian Reservation. Humes, 125 Wn. App. at 481. The defendant sought to allocate fault to the Tulalip Tribe (Tribe) who was protected from suit by sovereign immunity. Id. The trial court ruled that, because the Tribe had sovereign immunity, no fault could be allocated to it under RCW 4.22.070. Id. This court reversed, ruling that the Tribe's sovereign immunity did not bar the allocation of fault. Id. at 491.

But the Supreme Court in Smelser v. Paul, 188 Wn.2d 648, 653-54, 398 P.3d 1086 (2017) cautioned courts not to confuse "immunity" with the lack of a tort duty. We conclude that the motor vehicle statute is not a grant of "immunity," but

instead sets out the scope of the State's tort duty to the traveling public. RCW 46.44.020 provides that the State must erect and maintain a warning sign of an impaired clearance when vertical clearance is under 14 feet. But where clearance exceeds 14 feet, the State owes no further duty of care with regard to the overhead structure. The duty to exercise due care falls to the owners or operators of vehicles. The statutory language evidences an intent to define and narrow the scope of the State's tort duty. It does not immunize the State from all liability associated with damages arising from overhead obstacles on public highways.

Motorways contends that, even if RCW 46.44.020 precludes a finding of comparative fault in the State's action against Mullen, it does not preclude a finding of comparative fault in the State's action against Motorways. Motorways argues RCW 46.44.020 only addresses liability between the bridge owner and the motorist who struck the bridge. The argument is without merit. The State's claim is that Motorways drove its truck negligently by overtaking Mullen's truck on a narrow bridge, proximately causing Mullen to strike the overhead structures of the Skagit River Bridge. Because this claim concerns damage "by reason of the existence of any structure over or across any public highway," RCW 46.44.020 applies.

Finally, Mullen and Motorways argue that if we eliminate their ability to assert comparative fault against WSDOT, it will affect whether they are ultimately only severally liable or jointly and severally liable. The trial court expressly declined to rule on whether joint and several liability applies in this case, reserving that issue for trial. Joint and several liability was not an issue raised in the petition for discretionary review and, because the trial court made no ruling on the

question, there is no assignment of error on this issue. We decline to reach the issue of whether Mullen and Motorways' liability is joint and several or several only, as that issue is beyond the scope of our review. See Clark County v. W. Wash. Growth Mgmt. Hr'gs Review Bd., 177 Wn.2d 136, 144-45, 298 P.3d 704 (2013).

Affirmed.

WE CONCUR:

_Andrus, J._

_Mann, A.C.J._

_Becker, J._