

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE OCT 3 1 2019
Fairhurst, CJ.
**CHIEF JUSTICE**

This opinion was
filed for record
at 8 a.m. on October 31, 2019

Susan L. Carlson
**Susan L. Carlson**
Supreme Court Clerk

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, WASHINGTON STATE DEPARTMENT OF TRANSPORTATION, | ) ) ) ) | No. 96538-2 |
| Respondents, | ) ) ) | |
| DANIEL A. SLIGH and SALLETTEE R. SLIGH, individually and the marital community composed thereof; BRYCE KENNING, a single person, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | En Banc |
| MULLEN TRUCKING 2005, LTD., a Canadian corporation or business entity d/b/a MULLEN TRUCKING LP; WILLIAM SCOTT and JANE DOE SCOTT, individually and the marital community composed thereof, | ) ) ) ) ) ) ) ) ) | |
| Petitioners. | ) ) ) | |
| and | ) ) | |
| | ) | Filed OCT 3 1 2019 |
| SAXON ENERGY SERVICES, | ) | |

1

INC., TAMMY J. DETRAY and )
GREGORY DETRAY, individually )
and the marital community )
composed thereof; G&T )
CRAWLERS SERVICE, a )
Washington business entity, )
)
             Defendants. )
_____ )
)
MULLEN TRUCKING 2005, LTD., )
a Canadian corporation or business )
entity d/b/a MULLEN TRUCKING )
LP; WILLIAM SCOTT and JANE )
DOE SCOTT, individually and the )
marital community composed )
thereof, )
)
             Petitioners, )
)
         v. )
)
STATE OF WASHINGTON, )
)
             Respondent, )
)
PATTY AUVIL d/b/a OLYMPIC )
PENINSULA PILOT SERVICE and )
JOHN DOE AUVIL, individually )
and the marital community )
composed thereof; AMANDEEP )
SIDHU and JANE DOE SIDHU, )
individually and the marital )
community composed thereof, )
)
             Defendants, )
)
and )
)
MOTORWAYS TRANSPORT, LTD,)

a Canadian corporation,     )
    )
                  Petitioner.     )
    )

GONZÁLEZ, J—This case involves the interplay of our 1986 comparative fault statute, RCW 4.22.070, with two provisions of the 1937 motor vehicle act, RCW 46.44.020 and RCW 46.44.110. RCW 46.44.020 governs maximum vehicle heights and .110 imposes broad liability on those who cause damage to bridges and elevated structures while driving. We are asked to decide whether fault may be allocated to the State under our comparative fault statute when our maximum height statute states that "no liability may attach" to the State under these circumstances. We find no fault may be allocated to the State and affirm.

## FACTS

On May 23, 2013, a clear and sunny day, William Scott, a driver for Mullen Trucking 2005 Ltd., was transporting a 15-foot 11-inch oversize load on Interstate 5 from Canada to Vancouver, Washington.[1] Along the route was the Skagit River Bridge. The bridge varied in vertical clearance from 17 feet 3 inches in the center to 14 feet 5 inches at the edge.

---

[1] Mullen Trucking measured the load at 15 feet 9 inches and obtained a permit from the Washington State Department of Transportation (WSDOT) for a 15-foot 9-inch load. However, following the accident, the Washington State Patrol measured the load at 15 feet 11 inches, two inches above permit allowance. Further, the permit obtained from WSDOT contained a written warning, stating "ROUTE DOES NOT GUARANTEE HEIGHT CLEARANCES." Clerk's Papers at 342.

Scott's truck had a pilot vehicle, a 1997 Dodge Ram pickup truck driven by Tammy Detray. A pilot vehicle works in conjunction with the driver of an oversize load to guide it safely to its destination. As they entered and crossed the bridge in the right lane, Detray was distracted, talking to her husband on a hands-free cell phone device. Affixed to the right front of Detray's pickup was a 16-foot 2-inch tall clearance pole. In a written statement, Detray stated she did not strike the bridge with the pole. This was contradicted by at least one witness, Dale Ogden, who saw Detray's clearance pole hit the bridge four or five times. Detray was only 4.12 seconds and between 332 and 363 feet ahead of Scott; according to experts, even if Detray had alerted Scott to a clearance issue, Scott was too close to alter his path. Detray later admitted in her deposition that she should not have been in the right lane.

As Scott neared the bridge, he noticed a truck behind him quickly approaching. About a half mile before they entered the bridge, the approaching truck, which was owned by codefendant Motorways Transport Ltd. and driven by Amandeep Sidhu, was "virtually beside" Scott on his left. Clerk's Papers (CP) at 207. As they entered the bridge, Sidhu's truck was halfway beside Scott's truck, confining Scott to the right side of the bridge.

Scott's oversize load struck the lower right curvature portion of 11 sway braces. Next there was a giant bang, and "everything got violent." *Id.* at 210.

Scott held on and slammed on the brake pedal. There was another bang, objects were thrown through the air, and everything shook. Scott coasted to the end of the bridge. He understood what happened only when he looked back and "realized the bridge was in the water." *Id.* at 212. Sidhu did not stop and later said he did not know what had occurred.

By striking the trusses, Scott caused the north bridge section to collapse into the river. The Major Accident Investigation Team of the Washington State Patrol and the National Transportation Safety Board investigated the accident. Even though the load was two inches over the permit limit, it would have cleared the bridge if the truck had been in the left lane. The investigation team determined the proximate cause of this collision sequence was directly attributable to Scott's negligence. While the Skagit River Bridge was out of commission, traffic on I-5 was severely affected, and several detour routes were used until a temporary bridge was installed on June 18, 2013.

The State sued Mullen Trucking and Motorways Transport for negligence. The trucking companies counterclaimed, claiming the State was also negligent. The trucking companies have since conceded that the State cannot be held *liable*, but they seek to allocate fault to the State under our comparative fault statute to offset any damage award that may be entered against them.

The trucking companies base their negligence claims on numerous grounds. Among them, the State's duty to maintain roads and bridges; the fact that the State issued a permit for a load size that did not fit on its bridges; the fact that the bridge had been deemed "functionally obsolete" and a "Fracture Critical Bridge," CP at 329, 330; and the fact that the bridge had been struck nine times before.

The State moved for partial summary judgment, asserting that under RCW 46.44.020, no portion of the damages could be allocated to it. The trucking companies opposed the summary judgment motion, claiming that the State is not immune from purely defensive counterclaims and that RCW 46.44.020, the maximum height statute, is not a strict liability statute. The trial court granted the State's motion.

The trucking companies successfully moved for interlocutory review. The Court of Appeals affirmed the trial court. The Court of Appeals found a conflict between chapter 46.44 RCW and RCW 4.22.070, concluded chapter 46.44 RCW was more specific, and applied it. *Dep't. of Transp. v. Mullen Trucking 2005, Ltd.*, 5 Wn. App. 2d 787, 797-98, 428 P.3d 401 (2018). The Court of Appeals held the maximum height statute limited the State's actionable duty in tort, thereby precluding any allocation of fault. *Id.* at 797-98 (citing *Smelser v. Paul*, 188 Wn.2d 648, 653-54, 398 P.3d 1086 (2017)).

We granted the trucking companies' petitions for review. 192 Wn.2d 1022 (2019)

ANALYSIS

This case presents questions of statutory interpretation. Our review is de novo. *Williams v. Tilaye*, 174 Wn.2d 57, 61, 272 P.3d 235 (2012) (citing *State v. Wentz*, 149 Wn.2d 342, 346, 68 P.3d 282 (2003)). Our role in interpreting statutes is "to discern and implement the legislature's intent." *Id.* (citing *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003)). The plain meaning of the statutes may be discerned "from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision[s] in question." *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002).

Our constitution gives the legislature considerable power to determine if and when the State may be sued. "The legislature shall direct by law, in what manner, and in what courts, suits may be brought against the state." CONST. art. II, § 26. For many years the legislature did not consent to suit, maintaining common law sovereign immunity from suit for tortious conduct. *See* Debra L. Stephens & Bryan P. Harnetiaux, *The Value of Government Tort Liability: Washington State's Journey from Immunity to Accountability*, 30 SEATTLE U. L. REV. 35, 37 (2006). The State waived its immunity in 1961. LAWS OF 1961, ch. 136, § 1, *codified as*

RCW 4.92.090.[2] The State's waiver of immunity "operates to make the State presumptively liable in all instances in which the Legislature has *not* indicated otherwise." *Savage v. State*, 127 Wn.2d 434, 445, 899 P.2d 1270 (1995).

Here, the legislature has indicated otherwise. Under RCW 46.44.020, "[n]o liability may attach to the state" under these circumstances. We must decide the effect of this earlier, more specific statute, if any, on the general rule that damages must be allocated among most entities. *See* RCW 4.22.070.

The maximum height statute states, in pertinent part:

> [*N*]*o liability may attach* to the state or to any county, city, town, or other political subdivision by reason of any damage or injury to persons or property by reason of the existence of any structure over or across any public highway where the vertical clearance above the roadway is fourteen feet or more.

RCW 46.44.020 (emphasis added). Chapter 46.44 RCW also provides that

> [a]ny person operating any vehicle is liable for any damage to any public highway, bridge, elevated structure, or other state property sustained as the result of any negligent operation thereof. . . . Such damage to any state highway, structure, or other state property may be recovered in a civil action instituted in the name of the state of Washington

RCW 46.44.110.

Our comparative fault statute states, in pertinent part:

> In all actions involving fault of more than one entity, the trier of fact shall determine the percentage of the total fault which is attributable to every

---

[2] "The state of Washington, whether acting in its governmental or proprietary capacity, shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation." RCW 4.92.090.

entity . . . .The entities whose fault shall be determined include the claimant or person suffering personal injury or incurring property damage, defendants, third-party defendants, entities released by the claimant, entities with any other individual defense against the claimant, *and entities immune from liability to the claimant*, but shall not include those entities immune from liability to the claimant under Title 51 RCW.

RCW 4.22.070(1) (emphasis added).

Our comparative fault statute explicitly requires the trier of fact to determine the fault of every entity that caused the claimant's damages, including the claimant and entities immune from liability to the claimant, with one exception not relevant here. RCW 4.22.070. We must decide if this can be harmonized with RCW 46.44.020 and .110, which were enacted before, and reenacted after, the legislature's waiver of sovereign immunity.[3]

The trucking companies argue that RCW 46.44.020 and .110 are immunity statutes, and therefore easily fit within RCW 4.22.070 because fault can be allocated to immune parties. Accordingly, they reason, they must be allowed to attribute fault to the State as an immune party. The difficulty with this position is that RCW 46.44.020 does not speak in terms of immunity; it speaks specifically in terms of *attaching liability*. In 1937, while the government had sovereign immunity, it maintained a common law duty to maintain roads and streets in a safe

---

[3] The maximum height statute was enacted in 1937. LAWS OF 1937, ch. 189, § 48. Since the legislature waived sovereign immunity in 1961, the maximum height statute has been amended five times and the "no liability may attach" language remains. The statute has not been amended since the enactment of our comparative fault statute in 1986.

condition for ordinary travel. *See, e.g., Teater v. City of Seattle*, 10 Wash. 327, 38 P. 1006 (1894). Under then-existing tort law, the defendants would have been allowed to allocate fault to the State—very much like the attribution of fault requirement under RCW 4.22.070—which would have served as a complete bar to recovery. This is precisely what RCW 46.44.020 was designed to prohibit. While a complete bar to recovery is no longer the rule, RCW 46.44.020 has been amended five times since the legislature waived sovereign immunity in 1961, and the "no liability may attach" language, along with the negligent motorist being liable for "all damages" language in RCW 46.44.110, remains.

We agree with the State and the Court of Appeals that "the motor vehicle statute is not a grant of 'immunity,' but instead sets out the scope of the State's tort duty to the traveling public." *Mullen*, 5 Wn. App. 2d at 798-99.[4] The statutory language evinces an intent to protect our transportation infrastructure by holding motorists totally liable for damage when they negligently cause an over-height load to strike an overhead structure "where the vertical clearance above the roadway is

---

[4] Motorways Transport argues that even if "fault cannot be allocated as to Mullen under RCW 46.44.020, the statute does not prevent the State's fault from being allocated for" Motorways Transport because the statute protects the State only from liability against the colliding vehicle. Suppl. Br. of Motorways Transport at 15-17. While the statute describes what type of vehicles would be illegally operating on the roads, i.e., those exceeding 14 feet in height, the statute does not limit "no liability may attach" to any such colliding vehicles. RCW 46.44.020. Read in conjunction with RCW 46.44.110, specifically the "any person operating any vehicle is liable" language, Motorways Transport's argument fails.

fourteen feet or more." RCW 46.44.020. Here, due to the alleged negligence of both trucking companies, an over-height load struck sway braces on an over-14-foot bridge. Because the State has no actionable tort duty in these specific circumstances, there can be no fault to apportion, and the statutes therefore do not conflict.[5] This result is not in contravention of our state's statutory comparative fault system because the "legislature shall direct by law, in what manner, and in what courts, suits may be brought against the state." CONST. art. II, § 26.

Although we agree with the State's conclusion, we must discuss *Smelser*. In *Smelser*, we dealt with a deeply rooted common law doctrine, known as the parental immunity doctrine, and found that it operated to prevent allocation of fault under RCW 4.22.070. We stressed that "immunity" is not, in most instances, the lack of a tort duty. We concluded, however, that the "parental immunity doctrine" was not immunity but, rather, a lack of an actionable tort duty. *Smelser*, 188 Wn.2d at 653-54. We analogized the parental immunity doctrine to other

---

[5] Even if the statutes conflicted, the maximum height statute would govern as the more specific statute, and our conclusion would be the same. *See Univ. of Wash. v. City of Seattle*, 188 Wn.2d 823, 833, 399 P.3d 519 (2017) ("[B]efore applying the general-specific rule, we must identify a conflict between the relevant statutes that cannot be resolved or harmonized by reading the plain statutory language in context." (citing *Residents Opposed to Kittitas Turbines v. State Energy Facility Site Evaluation Council*, 165 Wn.2d 275, 309-10, 197 P.3d 1153 (2008))); *see also In re Estate of Kerr*, 134 Wn.2d 328, 343, 949 P.2d 810 (1998) ("A more specific statute supersedes a general statute only if the two statutes pertain to the same subject matter and conflict to the extent they cannot be harmonized.").

discretionary immunities, such as the government discretionary functions exception and the business judgment rule, and held that "just as it is not a tort for government to govern, it is not a tort for parents to parent." *Id.* at 657. We held that bad parenting should not "be subject to 'judicial second-guessing . . . through the medium of a tort action.'" *Id.* (alteration in original) (quoting *Zellmer v. Zellmer*, 164 Wn.2d 147, 160, 188 P.3d 497 (2008)). The "judicial second-guessing" that our courts have sought to avoid under the abovementioned discretionary doctrines is not implicated here. However, the legal proposition of *Smelser*, that there must be an actionable duty in tort before fault allocation is allowed, is. *See also Cummins v. Lewis County*, 156 Wn.2d 844, 852, 133 P.3d 458 (2006) ("A threshold negligence determination is whether a duty of care is owed to the plaintiff." (citing *Babcock v. Mason County Fire Dist. No. 6.*, 144 Wn.2d 774, 30 P.3d 1261 (2001)(plurality opinion))).

We emphasize that our holding does not affect the government's common law duties. *See, e.g., Keller v. City of Spokane*, 146 Wn.2d 237, 44 P.3d 845 (2002). Our holding has no bearing outside of the limited and specific circumstances here: a clear legislative determination to not allow allocation of fault to the State or its political subdivisions when a negligent motorist causes an over-height load to strike an overhead structure "where the vertical clearance above the roadway is fourteen feet or more." RCW 46.44.020.

CONCLUSION

Under these specific circumstances, the State owed no further actionable duty in tort, therefore our comparative fault statute does not apply and fault cannot be allocated. We affirm the Court of Appeals.

González, J.

WE CONCUR:

Fairhurst, C.J.

Madsen, J.

*State of WA, Dep't of Transp. v. Mullen Trucking 2005, LTD et al.* and
*Mullen Trucking 2005, LTD et al. v. State of WA, Dep't of Transp. et al.*
Wiggins, J. (dissenting)

No. 96538-2

WIGGINS, J. (dissenting)—At issue in this case is whether the State may be apportioned fault under RCW 4.22.070 even though "no liability may attach" to the State under RCW 46.44.020. This is a simple question of statutory interpretation. Instead of engaging with the plain language of the statutes first, as our case law mandates, the majority takes a circuitous route around it in order to avoid the result of that analysis—while RCW 46.44.020 provides that "no liability may attach" to the State, RCW 4.22.070 allows for the allocation of fault to "every entity," *including* those "immune from liability." Because the majority ignores this simple and straightforward reading of the text, I respectfully dissent.

ANALYSIS

I. The plain language of RCW 46.44.020 and RCW 4.22.070 is cohesive and unambiguously requires allocation of fault to the State

For questions of statutory interpretation, we look first to the text as an expression of legislative intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). If a statute's meaning is plain on its face, we give effect to that plain meaning and do not resort to tools of construction or legislative history. *Id.*; *see also State v. Costich*, 152 Wn.2d 463, 470, 98 P.3d 795 (2004) ("If

1

*State of WA, Dep't of Transp. v. Mullen Trucking 2005, LTD et al.* and
*Mullen Trucking 2005, LTD et al. v. State of WA, Dep't of Transp. et al.*
Wiggins, J. (dissenting)

the language is unambiguous, we give effect to that language and that language alone

because we presume the legislature says what it means and means what it says.").

When interpreting the plain language of related statutes, we construe them "in relation

to each other . . . and should [read them] as complementary and not as conflicting."

*Fray v. Spokane County*, 134 Wn.2d 637, 649, 952 P.2d 601 (1998); *see also Hallauer*

*v. Spectrum Props., Inc.*, 143 Wn.2d 126, 146, 18 P.3d 540 (2001) (statutes should

be interpreted to create a harmonious scheme).

The crux of this case is the meaning and operation of RCW 4.22.070, which

was adopted by our legislature as part of the tort reform act of 1986. LAWS OF 1986

ch. 305. The full text of RCW 4.22.070(1) is set forth in footnote 1.[1] The first sentence

---

[1] RCW 4.22.070(1) reads:

> In all actions involving fault of more than one entity, the trier of fact shall determine the percentage of the total fault which is attributable to *every entity which caused the claimant's damages* except entities immune from liability to the claimant under Title 51 RCW. The sum of the percentages of the total fault attributed to at-fault entities shall equal one hundred percent. The entities whose fault shall be determined include the claimant or person suffering personal injury or incurring property damage, defendants, third party defendants, entities released by the claimant, entities with any other individual defense against the claimant, and *entities immune from liability* to the claimant, but shall not include those entities immune from liability to the claimant under Title 51 RCW. Judgment shall be entered against each defendant except those who have been released by the claimant or are immune from liability to the claimant or have prevailed on any other individual defense against the claimant in an amount which represents that party's proportionate share of the claimant's total damages. The liability of each defendant shall be several only and shall not be joint except:
>
> (a) A party shall be responsible for the fault of another person or for payment of the proportionate share of another party where both were acting in concert or when a person was acting as an agent or servant of the party.
>
> (b) If the trier of fact determines that the claimant or party suffering bodily injury or incurring property damages was not at fault, the defendants against whom

2

*State of WA, Dep't of Transp. v. Mullen Trucking 2005, LTD et al.* and
*Mullen Trucking 2005, LTD et al. v. State of WA, Dep't of Transp. et al.*
Wiggins, J. (dissenting)

reads, "In all actions involving fault of more than one entity, the trier of fact shall determine the percentage of the total fault which is attributable to *every entity which caused the claimant's damages* except entities immune from liability to the claimant under Title 51 RCW." (Emphasis added.)

The tort reform act was passed "in order to create a more equitable distribution of the cost and risk of injury." LAWS OF 1986, ch. 305, § 100 (preamble to tort reform act). RCW 4.22.070(1) was part of this change. It currently provides that the trier of fact must allocate "the percentage of the total fault which is attributable to every entity which caused the claimant's damages except entities immune from liability to the claimant under Title 51 RCW."

Based on the findings of the trier of fact, RCW 4.22.070(1) directs the court to enter judgment "against each defendant except those who have been released by the claimant or are immune from liability to the claimant or have prevailed on any other individual defense against the claimant in an amount which represents that party's proportionate share of the claimant's total damages." Finally, RCW 4.22.070(1)(b) provides that the claimant's judgment against any at-fault defendants would be based on joint and several liability if the claimant was fault-free. Otherwise, the claimant's judgment is based on a proportionate share of damages. RCW 4.22.070(1).

---

judgment is entered shall be jointly and severally liable for the sum of their proportionate shares of the claimant[']s . . . total damages.

(Alteration in original) (emphasis added).

*State of WA, Dep't of Transp. v. Mullen Trucking 2005, LTD et al.* and
*Mullen Trucking 2005, LTD et al. v. State of WA, Dep't of Transp. et al.*
Wiggins, J. (dissenting)

In light of this background, I now move to how RCW 4.22.070 interacts with RCW 46.44.020, which, among other things, prohibits liability from attaching to the State in cases such as this one. RCW 46.44.020 provides:

> [N]o *liability may attach* to the state or to any county, city, town, or other political subdivision by reason of any damage or injury to persons or property by reason of the existence of any structure over or across any public highway where the vertical clearance above the roadway is fourteen feet or more.

(Emphasis added.)

The plain language of RCW 4.22.070 and RCW 46.44.020 does not conflict. Indeed, their texts fit together seamlessly. RCW 4.22.070(1) requires that "the trier of fact shall determine the percentage of the total fault which is attributable to every entity which caused the claimant's damages" (subject to the Title 51 RCW exception). Section RCW 46.44.020 prohibits actions that would cause liability to "attach" to the State and its subdivisions "where the vertical clearance above the roadway is fourteen feet or more." These two statutes would be in conflict only if determining the percentage of fault under section RCW 4.22.070 somehow caused *liability*, rather than fault, to attach to the at-fault entity, overriding the prohibition on the State's liability in RCW 46.44.020. In other words, if an attribution of fault to the State by RCW 4.22.070 *automatically* caused liability to attach to the State, despite RCW 46.44.020, then the two statutes would indeed conflict. But by the plain language of RCW 4.22.070, allocation of fault does *not* automatically cause liability to attach.

The plain language of the statutory scheme compels the conclusion that instead of causing liability to attach to the State, RCW 46.44.020 and RCW 4.22.070 merely

4

*State of WA, Dep't of Transp. v. Mullen Trucking 2005, LTD et al.* and
*Mullen Trucking 2005, LTD et al. v. State of WA, Dep't of Transp. et al.*
Wiggins, J. (dissenting)

prevent *liability* from attaching to the State for claims based on the height of the bridge. First, RCW 46.44.020 prevents liability from attaching to the State from claims arising "by reason of the existence of any structure over or across any public highway where the vertical clearance above the roadway is fourteen feet or more." Second, RCW 4.22.070 defines the parties against whom judgment may be entered, expressly declaring that "[j]udgment shall be entered against each defendant except those who . . . are immune from liability to the claimant." In other words, for claims for which the State is immune to liability—such as claims arising from the height of the Interstate 5 bridge involved here— RCW 4.22.070 declares that judgment shall not be entered against the State.

But that does not mean that no *fault* can be found in the State, as RCW 46.44.020 prevents the State from being held liable only when an over-height motor vehicle strikes an overhead structure. It does *not* prevent the State from being allocated fault. This is a direct result of the language of RCW 4.22.070, which requires fault to be attributed to "every entity which caused the claimant's damages . . . includ[ing] . . . entities immune from liability to the claimant." *Id.* This is telling, as "'[e]ntity' is the broadest possible word of inclusion for conveying the statutory mandate . . . . [It] appears to encompass all but inanimate objects or forces of nature; things as to which the concept of 'fault' cannot have meaningful application." Gregory C. Sisk, *Interpretation of the Statutory Modification of Joint and Several Liability: Resisting the Deconstruction of Tort Reform*, 16 U. PUGET SOUND L. REV. 1, 44-45 (1992) (footnotes omitted); *see also Price v. Kitsap Transit*, 125 Wn.2d 456, 461, 886

5

*State of WA, Dep't of Transp. v. Mullen Trucking 2005, LTD et al.* and
*Mullen Trucking 2005, LTD et al. v. State of WA, Dep't of Transp. et al.*
Wiggins, J. (dissenting)

P.2d 556 (1994) ("Based on the express language of the tort reform act, we conclude an 'entity', as that term is used in RCW 4.22.070(1), must be a juridical being capable of fault."). That, combined with the fact that the legislature explicitly included entities "immune from liability" among those entities to whom fault must be allocated, means that to exempt the State from any allocation of fault would be in contravention of the plain language of the statute. *See* RCW 4.22.070. Thus, RCW 4.22.070's allocation of fault to "every entity which caused the claimant's damages" *includes* attributing fault to parties immune from liability, as the State is here.

The purpose of RCW 4.22.070 supports this conclusion. As discussed above, the purpose of the tort reform act, of which RCW 4.22.070 is a part, was to "create a more equitable distribution of the cost and risk of injury." LAWS OF 1986, ch. 305, § 100. In order to accomplish this fair distribution of damages, the trier of fact must determine the fault of *all* responsible entities. Consequently, it is a foundational tenet of the comparative fault scheme created by the tort reform act that *every entity*, even those not included as parties to the legal action, is allocated fault. *See* Leonard E. Eilbacher, *Comparative Fault and the Nonparty Tortfeasor*, 17 IND. L. REV. 903, 903 (1984) ("To the extent that a given legal system ignores the fault of any tortfeasor, and shifts the financial burden from one culpable person to another, the fundamental principle of comparative fault is compromised."); *see generally* Sisk, *supra*.

There has been only one exemption to the allocation of fault under RCW 4.22.070: employers immunized by Title 51 RCW. The Title 51 RCW exemption was passed as an amendment in 1993 to protect the State, which had a lien on third-party

6

*State of WA, Dep't of Transp. v. Mullen Trucking 2005, LTD et al.* and
*Mullen Trucking 2005, LTD et al. v. State of WA, Dep't of Transp. et al.*
Wiggins, J. (dissenting)

recoveries, from incurring significant losses to the industrial insurance fund. H.B. 1264, 53d Leg., Reg. Sess. (Wash. 1993). Therefore, where the legislature intended to reduce the allocation of fault to the State, it did so explicitly through RCW 4.22.070. That the legislature elected to exempt *only* entities immune under Title 51 RCW indicates that it intended to continue allocating fault to all other immune parties, including the State, under actions implicating RCW 46.44.020.

Reviewing courts cannot read an exemption into RCW 4.22.070 where none has been included by the legislature. "Under expressio unius est exclusio alterius, a canon of statutory construction, to express one thing in a statute implies the exclusion of the other. Omissions are deemed to be exclusions." *In re Det. of Williams*, 147 Wn.2d 476, 491, 55 P.3d 597 (2002) (citation omitted). That the legislature made no exemption for any other entity evinces the legislature's intent to allocate fault, even when that entity is the plaintiff State.

The plain language is clear. RCW 4.22.070 requires allocation of fault to all parties, including those immune from liability (except as immunized under Title 51 RCW). RCW 46.44.020 immunizes the State from *liability* in cases such as the one before us, but it says nothing about fault—nor about the duty that the majority focuses on, as discussed below. Therefore, I would reverse the Court of Appeals, holding that fault may be allocated to the State.

7

*State of WA, Dep't of Transp. v. Mullen Trucking 2005, LTD et al.* and
*Mullen Trucking 2005, LTD et al. v. State of WA, Dep't of Transp. et al.*
Wiggins, J. (dissenting)

II.     The majority's claim that RCW 46.44.020 does not immunize the State but, rather, narrows the State's common law duty is unsupported and incorrect

In answering the question posed by this case, we need not go beyond the plain language of the statutes. However, because the majority ignores the plain language of RCW 46.44.020 and instead insists that RCW 46.44.020 limits the State's duty, I address the majority's argument.

First, the majority cannot have derived this conclusion from the plain language of the statute—although it attempts to do so. It argues that RCW 46.44.020 does not grant immunity from liability but, instead, "'sets out the scope of the State's tort duty to the traveling public.'" Majority at 8 (quoting *Dep't of Transp. v. Mullen Trucking 2005, Ltd.*, 5 Wn. App. 2d 787, 798-99, 428 P.3d 401 (2018)). The majority apparently bases this conclusion on the fact that RCW 46.44.020 does not expressly use the term "immunity"; therefore, the State has no tort duty in this situation. Majority at 8. But, as the plain language analysis above already indicates, this misinterprets the statute. True, RCW 46.44.020 does not use the word immunity—but it does not relieve the State of a duty of care either.[2] Further, the exemption from liability created by RCW 46.44.020 is *clearly* analogous to immunity, *not* lack of a duty of care. Immunity is consistently characterized as an exemption from liability. *See, e.g., Frost v. City of*

---

[2] There is a reference to "duty" in RCW 46.44.020, but it has nothing to do with the State's lack of duty of care—or *any* duty of care, for that matter. *See* RCW 46.44.020 ("If any structure over or across any public highway is not owned by the state or by a county, city, town, or other political subdivision, it is the duty of the owner thereof when billed therefor to reimburse the state department of transportation or the county, city, town, or other political subdivision having jurisdiction over the highway for the actual cost of erecting and maintaining the impaired clearance signs, but no liability may attach to the owner by reason of any damage or injury to persons or property caused by impaired vertical clearance above the roadway.").

*State of WA, Dep't of Transp. v. Mullen Trucking 2005, LTD et al.* and
*Mullen Trucking 2005, LTD et al. v. State of WA, Dep't of Transp. et al.*
Wiggins, J. (dissenting)

*Walla Walla*, 106 Wn.2d 669, 724 P.2d 1017 (1986) (statute providing only that "no liability [may be] imposed" granted immunity); *see also* BLACK'S LAW DICTIONARY 898 (11th ed. 2019) (defining "immunity" as "[a]ny exemption from a duty, *liability*, or service of process" (emphasis added)). Indeed, the very statute that revoked the State's sovereign immunity does not mention "immunity" at all—to the contrary, it speaks exclusively in terms of imposing liability. RCW 4.92.090 ("The state of Washington . . . shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation."). Thus the plain language of the statute does not support but counters the majority's conclusion.

Second, the majority's conclusion that RCW 46.44.020 limits the State's duty unnecessarily abrogates the State's common law duty to maintain the reasonable safety of its roadways and bridges. Under the majority's reasoning, as long as the State has met the clearance and signage requirements of RCW 46.44.020, it owes no additional duty to motorists and cannot be apportioned fault under RCW 4.22.070.

The majority relies on *Smelser v. Paul*, 188 Wn.2d 648, 398 P.3d 1086 (2017), for the assertion that there must be a duty in order to find fault. Majority at 9-10. I do not dispute this claim; in fact, I agree with it.[3] However, the State *does* have a duty

---

[3] I emphasize that *Smelser* should be distinguished on other grounds. In *Smelser*, we found no actionable tort duty and, therefore, no possible allocation of fault. 188 Wn.2d at 657. But the parental immunity at issue in *Smelser* cannot be compared to the proprietary common law duty at issue here. Parental immunity is akin to discretionary immunity in that it does not represent the *repeal* of a duty but, rather, the acknowledgement that no such duty could ever exist. *Id.* at 656. (citing *Zellmer v. Zellmer*, 164 Wn.2d 147, 188 P.3d 498 (2008)). In other words, it is "not a tort for government to govern, [and] it is not a tort for parents to parent." *Id.* at 657. The proprietary common law duty at issue here cannot be analogized to governmental or parental duties, which have never existed in our jurisprudence.

*State of WA, Dep't of Transp. v. Mullen Trucking 2005, LTD et al.* and
*Mullen Trucking 2005, LTD et al. v. State of WA, Dep't of Transp. et al.*
Wiggins, J. (dissenting)

under which fault can be allocated—the State's common law duty to build and maintain its roadways in a condition reasonably safe for ordinary travel. *See, e.g., Keller v. City of Spokane*, 146 Wn.2d 237, 249, 44 P.3d 845 (2002) ("a municipality owes a duty to all persons, whether negligent or fault-free, to build and maintain its roadways in a condition that is reasonably safe for ordinary travel"); *Lucas v. Phillips*, 34 Wn.2d 591, 597, 209 P.2d 279 (1949) ("having built, maintained, and operated [the bridge], [the county] was bound to use such care as would keep it in a reasonably safe condition for those who might go upon it"); *Teater v. City of Seattle*, 10 Wash. 327, 328-29, 38 P. 1006 (1894) (city has a duty to maintain bridges in reasonably safe condition). Nothing in RCW 46.44.020 abrogates this common law duty. *See Potter v. Wash. State Patrol*, 165 Wn.2d 67, 77, 196 P.3d 691 (2008) (a statute abrogates the common law only when there is a clear statement of legislative intent or where it is so repugnant to the common law that the two cannot coexist). Rather, RCW 46.44.020 imposes the *additional* duty of posting warning signs when the bridge is under 14 feet tall.[4] *Lucas*, 34 Wn.2d at 595-96 (the duty to post warning signs must be statutorily imposed unless the situation is inherently dangerous).

---

[4] The current version of RCW 46.44.020 was introduced as an amendment to the proposed statute, which solely concerned the driver's duty without any mention of the State's duty. LAWS OF 1937, ch. 189, § 48. (The original statute read, "It shall be unlawful for any vehicle unladen or with load to exceed a height of twelve (12) feet and six (6) inches above the level surface upon which the vehicle stands. This section shall not apply to authorized emergency vehicles or repair equipment of a public utility engaged in reasonable necessary operation."). This suggests that the purpose of the original statute was to establish the driver's duty—not the State's.

10

*State of WA, Dep't of Transp. v. Mullen Trucking 2005, LTD et al.* and
*Mullen Trucking 2005, LTD et al. v. State of WA, Dep't of Transp. et al.*
Wiggins, J. (dissenting)

The majority claims that its interpretation does not abrogate the common law duty but rather narrows it to the specific requirements of RCW 46.44.020. Majority at 10-11. However, if the State's *only* duty is to provide proper clearance and signage under RCW 46.44.020, it necessarily *no longer* has a duty to maintain the reasonable safety of its bridges in any other manner. Therefore, the majority abrogates the common law without any legislative directive to do so. Further, the majority's justification that the abrogation is cabined to a narrow set of circumstances is irrelevant—the consequences of the abrogation would lead to untenable results.[5]

Because RCW 46.44.020 does not include a clear statement abrogating the State's preexisting common law duty, the duty remains. *Potter*, 165 Wn.2d at 77. Accordingly, the State may still be allocated fault under RCW 4.22.070 for failing to maintain its roadways and bridges, regardless of whether it complied with its statutory duties under RCW 46.44.020.

---

[5] The majority's reading is internally inconsistent. The State cannot have a duty *only* to comply with RCW 46.44.020's signage and height requirements in the case of an overhead bridge strike by an over-height vehicle while simultaneously retaining its general duty to maintain the reasonable safety of its bridges for all other motorists. If the State negligently maintained a bridge and a standard-height vehicle caused its collapse, the State would owe a duty. If, however, the State negligently maintained the same bridge and an over-height vehicle caused it to collapse, it would owe *no duty*. Under the majority's reading, the State could not be allocated fault *even if* they constructed the bridge out of toothpicks, so long as it was an over-height vehicle that led to its collapse and not a passenger vehicle. This would be true despite the fact that the State's negligence poses a danger to *all* motorists on the road.

*State of WA, Dep't of Transp. v. Mullen Trucking 2005, LTD et al.* and
*Mullen Trucking 2005, LTD et al. v. State of WA, Dep't of Transp. et al.*
Wiggins, J. (dissenting)

## CONCLUSION

We must presume that the legislature means exactly what it says. Where the legislature has spoken plainly, its words do not require interpretive statutory construction. *See Sidis v. Brodie/Dohrmann, Inc.*, 117 Wn.2d 325, 329, 815 P.2d 781 (1991). Therefore, RCW 46.44.020 and RCW 4.22.070 need no construction—together they create a cohesive statutory scheme and are not in conflict with one another. Once the State has met the statutory requirements of RCW 46.44.020, it may not be subject to suit arising from an over-height bridge strike. It may, however, still be allocated fault under RCW 4.22.070 for breach of its duty to maintain its roadways and bridges.

The majority holds that after meeting the statutory requirements of RCW 46.44.020, the State owed no further duty in tort and therefore could not be allocated fault under RCW 4.22.070. The majority provides insufficient support for the proposition that RCW 46.44.020 is not an immunity statute and, without any legislative directive to do so, abrogates the State's long-standing common law duty to maintain the reasonable safety of its roadways and bridges. For these reasons, I respectfully dissent.

*State of WA, Dep't of Transp. v. Mullen Trucking 2005, LTD et al.* and
*Mullen Trucking 2005, LTD et al. v. State of WA, Dep't of Transp. et al.*
Wiggins, J. (dissenting)

Wiggins, J.

Gloze McCad, J.

Stephens, C.J.

13

No. 96538-2

YU, J. (concurring in dissent) — I concur in the result reached by the dissent.

*Yu, J.*